**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MICHAEL TREADWAY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BETTERMENT LLC and BETTERMENT SECURITIES LLC,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Michael Treadway ("Plaintiff"), individually and on behalf of all others similarly situated, by and through undersigned counsel, brings this action against Defendants Betterment LLC ("Betterment LLC") and Betterment Securities LLC ("Betterment Securities") (collectively, "Betterment" or "Defendants"). Plaintiff alleges the following upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, including review and analysis of, *inter alia*: (a) documents created and distributed by Defendants; (b) account statements, disclosures, agreements, and Form ADV materials provided to Plaintiff and similarly situated clients; and (c) publicly available information concerning Defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE CASE**

1.      Betterment acted as Plaintiff Michael Treadway's investment adviser. Betterment had discretionary authority over the investment choices in Mr. Treadway's account and received a fee for exercising that discretionary authority.

2.      As an investment adviser, Betterment owed Mr. Treadway fiduciary duties. It could not put its interests ahead of his.

3.      A cash sweep account automatically transfers customer cash from a brokerage account to a bank account where, in a properly administered program, the customer earns interest.

1

This case arises from Defendants' exploitative implementation of Betterment's Transfer Sweep Program (the "TSP"), resulting in the breach of Defendants' fiduciary duties owed to Plaintiff and similarly situated advisory clients. Betterment's own materials acknowledge that TSP Deposit-Accounts "do not bear interest" and that "sweep funds held in the TSP do not earn interest."[1]

4.      Despite its role as an investment adviser and fiduciary, Betterment automatically "swept" uninvested cash balances into non-interest-bearing deposit accounts at participating banks selected by Defendants through the TSP. Because the TSP paid zero interest, Plaintiff and Class members lost significant interest they would have otherwise earned had Defendants swept their cash into accounts or vehicles paying reasonable market rates.

5.      Defendants' own disclosures acknowledged that the TSP created conflicts of interest. Betterment's Form ADV brochure disclosed that Betterment Securities "receives payments from participating TSP banks based on certain balances maintained in those accounts" and that "Betterment has a conflict of interest because it has an incentive to increase the balances in the TSP banks in order to increase the revenue Betterment Securities earns."[2] This structure ensured that Betterment would always retain the lion's share of the economic benefit generated by clients' swept cash.

6.      Throughout the Class Period, Defendants paid no interest on all client balances in the TSP. This was not merely a low rate; it was no interest at all. Defendants kept the entirety of the returns generated by clients' cash for themselves, while paying those clients nothing.

7.      Defendants controlled the TSP structure and unilaterally determined how client cash moved through the Betterment ecosystem. Betterment's client agreement provides that "Client hereby elects to participate" in the TSP and that, by participating, "Client directs Betterment

---

[1] Betterment Securities Brokerage Agreement, effective March 31, 2022 (the "Brokerage Agreement"), § 26(t), *Transfer Sweep Program.*

[2] Betterment Brochure, Item 4.C, *Transfer Sweep Program*.

Securities" to deposit Eligible TSP Funds into a TSP Deposit-Account.[3] In substance, however, clients had no ability to negotiate, contest, or opt out of the TSP for Eligible TSP Funds ("Eligible TSP Funds"). This unchecked discretion enabled Defendants to maintain a zero-percent rate even as market interest rates rose dramatically.

8.      The SEC has specifically recognized that "cash sweep programs" are a "common source[] of conflicts of interest."[4] Despite this regulatory warning, Defendants exploited their discretion over the TSP to maximize their own financial benefits at the direct expense of their fiduciary clients.

9.      The TSP was highly lucrative for Defendants. During the Class Period, the "spread" between the nonexistent rates passed along to clients and the returns Defendants and the participating banks earned from client cash constituted a substantial and undisclosed profit center for Defendants. By paying clients nothing on their swept amounts, all while deploying those funds in a rising-rate environment, Defendants captured the entire yield generated by client deposits.

10.     Betterment's disclosures were inadequate. Betterment failed to disclose the amount, rate, or formula used to calculate payments Betterment Securities received from TSP banks; the spread Betterment retained; the impact of the TSP on client returns; and the availability of higher-yield alternatives, including money market funds and Betterment's own Cash Reserve product, which would have allowed clients to earn interest on their cash. These omissions deprived clients of material information necessary to evaluate Betterment's conflicts of interest. Betterment's disclosures were insufficient to justify an arrangement under which it exercised discretionary authority over client cash, retained the economic benefits generated by that cash, and paid clients

---

[3] *See supra*, n.1.

[4]      https://www.sec.gov/about/divisions-offices/division-trading-markets/broker-dealers/staff-bulletin-standards-conduct-broker-dealers-investment-advisers-conflicts-interest (last accessed July 10, 2026).

no interest. By structuring and administering the TSP in this manner, Betterment placed its own financial interests ahead of those of its clients, in breach of its fiduciary duties.

11. Even if Betterment disclosed that TSP Deposit-Accounts did not bear interest and that Betterment Securities received payments from TSP banks, those disclosures were not sufficient to permit an investment adviser with discretionary authority to capture 100% of the economic return on client cash while paying the client 0%. The conflict was not merely undisclosed; it was an inherently disloyal arrangement that placed Betterment's revenue interest ahead of its clients' interests.

12. Other metrics—including the federal funds rate, Treasury bill yields, and money market fund returns—further evidence that Defendants' sweep rates were not reasonable. For example, between March 16, 2022, and July 26, 2023 alone, the Federal Reserve announced 11 rate hikes, increasing the federal funds rate from a target range of 0.00%–0.25% to a target range of 5.25%–5.50%. Throughout this period, Defendants' rate under the TSP remained at zero.

13. Comparable brokerages and cash-management alternatives paid substantially higher rates on swept cash. For example, Fidelity swept clients' cash into a money market mutual fund yielding over 3.30%, Vanguard offered yields of 3.04% to 3.62%, and R.W. Baird offered approximately 3.54%. By contrast, Defendants failed to even pay a tiny fraction of these market rates through the TSP—indeed, nothing at all.

14. Defendants breached their fiduciary duties by structuring and administering the cash sweep program to maximize their own compensation at the expense of their clients, placing client cash into non-interest-bearing accounts and appropriating for themselves the interest income that rightfully should have benefited clients.

15. Plaintiff brings this action individually and on behalf of a Class of similarly situated individuals to recover damages arising out of Defendants' violations of the law, and for declaratory relief, injunctive relief, disgorgement, and such other relief as the Court may deem just and proper.

**PARTIES**

16.    At all times material hereto, Plaintiff Michael Treadway has been a resident and citizen of New Jersey and an individual client of Betterment. Throughout the relevant time period, Plaintiff's Eligible TSP Funds in his account were swept into non-interest-bearing TSP Deposit-Accounts pursuant to the TSP.

17.    Defendant Betterment LLC is an SEC Registered Investment Adviser located at 450 West 33rd Street, 11th Floor, New York, New York 10001. Upon information and belief, Betterment LLC provided investment advisory services to Plaintiff and the Class through Betterment's wrap-fee advisory program, exercised discretionary authority over client accounts, and closely cooperated with Betterment Securities in connection with the brokerage and transaction services integrated with the Program.

18.    Defendant Betterment Securities is a broker-dealer registered with the SEC and FINRA and located at 450 West 33rd Street, 11th Floor, New York, New York 10001. Upon information and belief, Betterment Securities swept Eligible TSP Funds into TSP Deposit-Accounts, deposited and withdrew funds at Program Banks as directed by Betterment, maintained account records, and received payments from participating TSP banks based on certain balances maintained in TSP accounts.

**JURISDICTION AND VENUE**

19.    This Court has jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d), this Court has subject matter jurisdiction because (1) the amount in controversy, exclusive of costs and interest, exceeds the sum of $5,000,000.00, (2) the proposed Class is comprised of at least 100 members, and (3) minimal diversity exists between at least one plaintiff or class member and one defendant.

20.    This Court has personal jurisdiction over Defendants because Defendants are located in this District, regularly conduct business and activities in this District, and a substantial part of the acts and omissions complained of occurred in this District.

21.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants reside in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District, including Defendants' design, implementation, disclosure, and operation of the TSP from offices located in this District.

**FACTUAL BACKGROUND**

**A.      Defendants' Advisory Relationship and Fiduciary Duties**

22.     By entering into the Betterment advisory relationship, Plaintiff and Class members engaged Betterment to provide investment advisory services with respect to their accounts and other fiduciary services.

23.     Indeed, Betterment holds itself out to the public as a fiduciary. Through its materials, Betterment explicitly states that it is a Registered Investment Advisor with the SEC and is held to the fiduciary standard required under the Investment Advisers Act. It further represents that clients can be sure the financial advice they receive from Betterment, whether online or from human advisors, is in their best interest. An example of Betterment's disclosure may be seen on its website:

## Why is Betterment a fiduciary?

A common point of confusion is whether or not robo-advisors can be fiduciaries. So let's clear up any ambiguities: Yes, they certainly can be.

Betterment is a Registered Investment Advisor (RIA) with the SEC and is held to the fiduciary standard as required under the Investment Advisers Act.

Acting as a fiduciary aligns with Betterment's mission because we are committed to helping you build a better life, where you can save more for the future and can make the most of your money through our cash management products and our investing and retirement products.

I, as well as the rest of Betterment's dedicated team of human advisors, are also Certified Financial Planners® (CFP®, for short). We're held to the fiduciary standard, too.

This way, you can be sure that the financial advice you receive from Betterment, whether online or from our team of human advisors, is in your best interest.

24.　Betterment Securities' fiduciary duties are further described in Regulation Best Interest ("Reg. BI") under the Securities Exchange Act of 1934, which requires broker-dealers to act in retail clients' best interests, meeting obligations of disclosure, care, conflicts of interest, and compliance.

25.　Despite these representations and obligations, Defendants failed to adhere to this standard throughout the relevant Class Period.

### B.　The Transfer Sweep Program

26.　Betterment operates the TSP. Betterment's Form ADV brochure describes the TSP as a program where eligible client funds are contributed to, or received into, a non-interest bearing, FDIC-insured deposit account at one or more participating banks.[5]

27.　A "sweep program" is a "service provided by a broker or dealer where it offers to its customer the option to automatically transfer free credit balances in the securities account of the customer to either a money market mutual fund product as described in § 270.2a-7 or an account at a bank whose deposits are insured by the Federal Deposit Insurance Corporation."[6]

28.　Sweep deposits play a pivotal role as a capital source for banks, empowering them to utilize these deposits for various corporate purposes. This includes activities such as making loans or investing in government securities. The disparity between the interest rate paid and the interest rate earned by a bank on those deposits is commonly referred to as the Net Interest Margin ("NIM").

29.　Funds eligible for the TSP include, but are not limited to, deposits, withdrawals, and dividends. Betterment's materials further state that TSP Funds may include free credit balances expected to be maintained in the Account for temporary periods while transfers or trades settle or when there has been a delay in completing transfers or trades.[7]

---

[5] *See supr*a n.2.

[6] 17 CFR 240.15c3-3(a)(17).

[7] *See supr*a n.1.

30.    The SEC, in its Staff Bulletin: Standards of Conduct for Broker-Dealers and Investment Advisers: Conflicts of Interest, issued August 3, 2022, emphasized that "cash sweep programs" are a "common source[ ] of conflicts of interest." Betterment's own disclosures confirm that the TSP created precisely that kind of conflict.

31.    The TSP was not an interest-bearing cash option for clients. Betterment's client agreement states in plain terms: "TSP Deposit-Accounts do not bear interest and sweep funds held in the TSP do not earn interest."

32.    At the same time, Betterment received payments from participating TSP banks based on balances maintained in the TSP accounts. Thus, every dollar of client cash swept into the TSP increased the base on which Betterment could earn bank payments, even though the client received no interest on that same cash.

33.    Betterment's Form ADV brochure expressly acknowledges the resulting conflict: "Betterment has a conflict of interest because it has an incentive to increase the balances in the TSP banks in order to increase the revenue Betterment Securities earns."[8] An example of this disclosure may be seen below (emphasis added):

---

[8] *See supra* n.2.

C.  Transfer Sweep Program

Betterment Securities operates a transfer sweep program ("TSP") where eligible client funds are contributed to, or received into, a non-interest bearing, FDIC-insured deposit account at one or more participating banks. Funds eligible for the TSP include, but are not limited to, deposits,

32

withdrawals, and dividends, and remain in the TSP account for temporary periods while transfers or trades settle or when there has been a delay in completing transfers or trades. Betterment Securities receives payments from participating TSP banks based on certain balances maintained in those accounts. Betterment has a conflict of interest because it has an incentive to increase the balances in the TSP banks in order to increase the revenue Betterment Securities earns. Betterment does not exercise discretion over the period client funds are held at TSP banks, which is typically based on transaction processing times or other factors outside of Betterment's control, and is not influenced by these payments.

34.     As demonstrated above, Betterment states that it "does not exercise discretion over the period client funds are held at TSP banks," and that the period is typically based on transaction processing times or other factors outside of Betterment's control. That statement does not disclose the magnitude of Betterment's bank-paid compensation, the spread retained, the amount of lost client yield, or the alternatives that could have allowed clients to earn interest on cash.

35.     The TSP almost exclusively benefited Betterment. Through the TSP, Betterment and its affiliate obtained revenue tied to client cash balances while clients received no interest, no share of the bank-paid compensation, and no meaningful account-level disclosure of the spread Betterment retained.

**C.    Defendants Placed Class Members' Cash in Accounts Paying Clients Zero Interest**

36.    Defendants breached their fiduciary duties by placing and maintaining Plaintiff's and Class members' Eligible TSP Funds in non-interest-bearing TSP Deposit-Accounts while Betterment received payments from participating banks based on balances in those accounts.

37.    As Plaintiff's investment adviser and as the entity controlling the Betterment advisory platform, Betterment owed Plaintiff and Class members fiduciary duties of loyalty, care, candor, full and fair disclosure, and good faith. Betterment was required to make decisions for client accounts in clients' best interests, not to prefer its own revenue interest in bank-paid sweep compensation.

38.    Upon information and belief, Defendants did not negotiate or pass through a fair return on TSP balances for Plaintiff and Class members. Instead, Defendants established and maintained a structure in which participating banks paid Betterment an increasing rate contingent on TSP balances, while Plaintiff and Class members were credited nothing on their swept cash.

39.    This was not an incidental account feature. Betterment's own disclosures explicitly state that Betterment had an incentive to increase the balances in TSP banks in order to increase the revenue it earns. The larger the balance maintained in the TSP and the longer client cash remained there, the greater Betterment's opportunity to earn revenue while clients received no interest. Betterment consciously took steps to increase its own remuneration through the TSP at the expense of its clients, in direct violation of its fiduciary obligations.

**D.    Defendants' Disclosures Were Inadequate and Did Not Cure the Fiduciary Breach**

40.    Betterment's agreements and disclosures merely told clients that the TSP existed, that TSP Deposit-Accounts do not bear interest, and that sweep funds held in the TSP do not earn interest. Betterment also disclosed that Betterment Securities receives payments from TSP banks based on certain balances maintained in those accounts.

10

41. Those disclosures were incomplete and materially misleading. Betterment did not disclose, among other things, the interest, earnings, payments, or other consideration paid by TSP banks; the methodology used to calculate those payments; the percentage of the economic return Betterment retained; the amount of interest or other earnings generated on clients' swept cash; or the actual dollar value of the spread Betterment captured from Plaintiff's and Class members' funds.

42. Betterment likewise failed to disclose the practical economic impact of the TSP on client returns. A reasonable client reviewing Betterment's disclosures would not understand how much interest Betterment retained, how much interest the client forfeited, or how the returns on cash held in the zero-interest TSP compared to reasonably available interest-bearing alternatives.

43. Betterment also failed to adequately disclose the existence of higher-yield alternatives or that Betterment could and should exercise its discretion to use those alternatives for client cash. For example, Betterment represented that its Cash Reserve program provided clients "the opportunity to earn interest on cash," yet its TSP disclosures did not explain why Eligible TSP Funds were instead swept into a non-interest-bearing deposit program rather than an available interest-bearing cash management or money market alternative, nor did Betterment disclose the financial incentive it had to maintain client funds in the TSP.

44. Betterment also failed to inform its clients of higher-yield alternatives. Betterment Cash Reserve, for example, was described as providing clients "the opportunity to earn interest on cash," yet Betterment's TSP disclosures did not fully explain why Eligible TSP Funds were placed into a non-interest-bearing sweep structure rather than an available interest-bearing alternative or money market option.

45. Had Betterment provided full and fair disclosure of these material facts, Plaintiff and other Class members would not have agreed to have their cash swept into the TSP, would have transferred those funds to available interest-bearing alternatives, would have invested those funds elsewhere, or otherwise would have taken steps to avoid the loss of interest and Betterment's undisclosed capture of the economic return on their cash.

46.     As a result of Betterment's omissions and breaches of fiduciary duty, Plaintiff and the Class were deprived of material information necessary to make informed decisions regarding the handling of their cash, were denied the full benefit of the earnings generated by their funds, and suffered substantial financial losses.

**E.      Objective Market Rates and Alternatives Confirm the Harm to Plaintiff and the Class**

47.     The zero-percent return paid to Plaintiff and Class members on TSP balances was unreasonable relative to objective market benchmarks, particularly after short-term interest rates began increasing in 2022.

48.     Federal benchmark interest rates, including the federal funds rate, are an appropriate point of comparison for the reasonableness of cash returns. The federal funds rate is the rate banks charge to borrow from each other overnight. As the Board of Governors of the U.S. Federal Reserve System explains, changes in the target range for the federal funds rate influence short-term interest rates for other financial instruments.

49.     For one, the effective federal funds rate rose from a low of nearly zero to a 20-year high of approximately 5.33%, based on the Federal Reserve increasing the target range to 5.25% to 5.50%. For example, between March 16, 2022, and July 26, 2023 alone, the Federal Reserve announced 11 hikes to the federal funds rate, increasing it from a target range of 0.00% to 0.25% to a target range of 5.25% to 5.50%.[9]

50.     In addition to the federal funds rate, a reasonable assessment of client cash returns considers U.S. Treasury bill rates, money market fund yields, repurchase-agreement rates, and other short-term cash alternatives. These benchmarks rose materially in 2022 and 2023 all while Betterment's TSP disclosures stated that client sweep funds held in TSP Deposit-Accounts did not earn interest.

---

[9]     Federal Reserve, *Economy at a Glance – Policy Rate* (Jan. 30, 2025), https://www.federalreserve.gov/economy-at-a-glance-policy-rate.htm (last accessed July 6, 2026).

51. Based on its ordinary meaning, "reasonable" is synonymous with "fair." Accordingly, a reasonable rate of return on swept client cash is the rate that would result in a competitive market under fair market conditions—in other words, the rate parties would agree to in an arm's-length transaction where neither party is able to exert market power over the other.

52. The Organization for Economic Co-Operation and Development ("OECD") guidance for financial transactions states that "in applying the arm's length principle to a financial transaction it is necessary to consider the conditions that independent parties would have agreed to in comparable circumstances."

53. Fair market value is defined by the IRS as: "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." 26 C.F.R. § 25.2512-1.

54. IRS regulations define an "arm's-length interest rate" for purposes of assessing transfer pricing between related entities as: "a rate of interest which was charged, or would have been charged, at the time the indebtedness arose, in independent transactions with or between unrelated parties under similar circumstances. All relevant factors shall be considered, including the principal amount and duration of the loan, the security involved, the credit standing of the borrower, and the interest rate prevailing at the situs of the lender or creditor for comparable loans between unrelated parties." 26 CFR § 1.482-2(a)(2).

55. Consistent with these common-sense definitions, a reasonable sweep rate should take into account market rates for comparable products, market-based intermediary rates commonly accepted for placing depositor cash with third parties, rates applicable to short-term instruments like repurchase agreements, and other short-term benchmark rates, including the federal funds rate and Treasury bills.

56. The Department of Labor has similarly recognized that a reasonable rate of interest may be determined by reference to short-term rates available to other bank clients, rates offered by

other banks, rates available from money market funds, rates applicable to short-term instruments such as repurchase agreements, or benchmarks such as Treasury bills.

57.     By way of example, Section 4975 of the Internal Revenue Code and ERISA Section 408 place the burden of demonstrating reasonableness on the financial institution. Defendants cannot meet this burden because the interest rate they used in the TSP does not meet any definition of a reasonable rate. Indeed, Betterment's TSP credited Plaintiff and Class members 0% on swept cash while Betterment Securities received payments from participating TSP banks based on balances maintained in those accounts.

58.     For purposes of illustration, the following charts depict the one-year and three-month Treasury bill rates between 2017 and 2026:





59.    The repo rate similarly increased together with the federal funds rate beginning in 2022. For purposes of illustration, the following graph depicts the repo rates between 2017 and 2026:



60.    As depicted above, like other short-term interest rate benchmarks, the repo rate increased alongside the federal funds rate beginning in 2022.

61.    Three-month Treasury bills, an instrument the Department of Labor has advised should be considered in determining a reasonable interest rate, rose in yield from 0.046% as of January 1, 2022, to 5.394% as of January 9, 2024. Nevertheless, Defendants paid clients 0.0%—not merely a fraction of these rates, but at times literally nothing.

62.     Other cash sweep and cash-management options paid materially more than zero. For example, competitor sweep programs and money market fund sweep options offered yields materially above the zero-percent return credited to Plaintiff and the Class under Betterment's TSP.

63.     As the federal funds target rate increased in 2022 and 2023, cash alternatives became materially more valuable. Betterment's TSP nevertheless continued to route Eligible TSP Funds through a structure in which clients earned no interest and Betterment had a revenue incentive tied to TSP balances.

64.     By paying clients nothing through the TSP while receiving bank payments tied to TSP balances, Defendants did not act in their clients' best interests. Instead, Defendants placed their own revenue interest above clients' interest in receiving a fair return on cash and thereby breached their fiduciary duties.

65.     Plaintiff and the Class had no meaningful ability to avoid the harm caused by the TSP.

66.     Defendants made material misrepresentations and omissions concerning the TSP because they failed to provide full and fair disclosure of the economics of the sweep arrangement. The disclosures did not tell clients the rates or payments Betterment received from participating banks, the magnitude of the spread retained, the effect of the TSP on clients' cash returns, or the existence and availability of higher-yield alternatives.

67.     Plaintiff and the Class suffered harm as a result, including lost interest or other returns that should have accrued on their cash, loss of the time value of money, diminution of the growth of their invested assets, and the deprivation of the economic benefit that Betterment captured for itself through the TSP.

68.     Defendants' conduct constitutes a continuing course of wrongful conduct that has caused, and continues to cause, harm to Plaintiff and the Class. Each day that Defendants route or maintain client cash while paying clients zero interest and receiving bank-paid compensation based on "swept" balances constitutes a separate and continuing breach of Defendants' fiduciary duties.

16

69. As a direct and proximate result of Defendants' conduct, Plaintiff and Class members suffered damages in an amount to be proven at trial, and Defendants obtained revenue and other benefits that equity and fiduciary law require them to disgorge.

## CLASS ALLEGATIONS

70. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of himself and all others similarly situated defined as follows:

71. The Class is defined as follows:

All persons in the United States whose cash was swept, deposited, routed, or maintained in Betterment's Transfer Sweep Program during the applicable limitations period.

72. **Numerosity.** Upon information and belief, there are thousands of Class members, if not more, so joinder of all members is impracticable. While the exact number of Class members can only be determined by appropriate discovery, Plaintiff believes that Class members are geographically dispersed because Betterment provides its investment advisory and brokerage services through an online platform available throughout the United States.

73. **Commonality.** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. These common legal and factual questions, each of which may also be certified under Rule 23(c)(4), include the following:

(a) whether Defendants owed fiduciary duties to Plaintiff and the putative Class members in connection with the TSP;

(b) whether Defendants breached those fiduciary duties by placing or maintaining client cash in non-interest-bearing TSP Deposit-Accounts while Betterment received payments from participating banks based on TSP balances;

(c) whether Defendants' TSP disclosures provided full and fair disclosure of Betterment's economic incentives, the magnitude of the spread retained, the impact on client cash returns, and the existence and availability of higher-yield alternatives;

17

(d) whether any disclosure could lawfully permit an investment adviser with discretionary authority to capture 100% of the return on client cash while paying the client 0%;

(e) whether Plaintiff and the Class are entitled to declaratory relief concerning the TSP and Betterment's disclosures;

(f) whether Plaintiff and the Class are entitled to injunctive relief prohibiting Defendants from continuing to operate the TSP in its current form or otherwise profiting from the spread on client cash;

(g) whether this case may be maintained as a class action under Fed. R. Civ. P. 23; and

(h) to what extent Class members are entitled to damages, disgorgement, restitution, attorneys' fees, costs, and other relief.

74. **Typicality**. Plaintiff's claims are typical of the claims of the Class because he was a Betterment client whose cash balances were subjected to the same structure challenged in this action. Plaintiff's claims arise from the same course of conduct by Defendants, and the relief sought is common to the Class.

75. **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other Class members and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

76. **Predominance & Superiority.** Absent a class action, most Class members would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The damages or other financial detriment suffered by Plaintiff and putative Class members are relatively small compared to the burden and expense that would be

required to individually litigate their claims against Defendants, so it would be impracticable for members of the proposed Class to individually seek redress for Defendants' wrongful conduct.

77. **Final Declaratory or Injunctive Relief.** Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the Class members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

**FIRST CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
**(On behalf of Plaintiff and the Class)**

78. Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1–77 by reference as if fully set forth herein.

79. At all relevant times, Defendants owed fiduciary duties to Plaintiff and the members of the Class. Those duties arose from, among other things, Betterment LLC's status as an SEC Registered Investment Adviser, Betterment's discretionary authority over client accounts, Defendants' custody or control over client assets and cash movements, and Defendants' undertaking to act in clients' best interests.

80. As fiduciaries to Plaintiff and the Class, Defendants owed duties of loyalty, candor, due care, prudence, good faith, and full and fair disclosure. Defendants were required to act for the benefit of Plaintiff and the Class and to avoid arrangements that put Betterment's own revenue interest ahead of clients' interest in receiving a fair return on their cash.

81. Defendants breached those duties by designing, implementing, maintaining, and operating the TSP so that Betterment received payments from participating banks based on TSP balances while Plaintiff and Class members received no interest on swept funds.

82. Defendants further breached their fiduciary duties by failing to exercise their discretion to allocate client cash to an interest-bearing account.

83. Defendants further breached their fiduciary duties by failing to provide full and fair disclosure of the TSP's economics, including the payments Betterment Securities received from TSP

19

banks, the magnitude of the spread retained, the impact on client cash returns, and the existence and availability of higher-yield alternatives.

84.     Defendants also breached their fiduciary duties because no disclosure could permit Defendants to use discretionary advisory control and an affiliated broker-dealer sweep arrangement to capture 100% of the return on client cash while paying clients 0%.

85.     Plaintiff and the Class were fully dependent upon Defendants' ability, skill, knowledge, discretion, and good faith with respect to the Betterment Program, account-management processes, and TSP.

86.     As a direct and proximate consequence of Defendants' conduct as alleged herein, Plaintiff and the Class suffered damages in an amount to be determined at trial and seek disgorgement of any unjust gains of Defendants, as well as all other equitable relief deemed just and proper.

### SECOND CAUSE OF ACTION
### DECLARATORY RELIEF
### (On behalf of Plaintiff and the Class)

87.     Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1–77 by reference as if fully set forth herein.

88.     An actual controversy exists between Plaintiff and the Class, on the one hand, and Defendants, on the other, concerning the legality of Defendants' TSP, the sufficiency of Betterment's disclosures, and Defendants' continuing fiduciary obligations to clients whose cash is swept, deposited, routed, or maintained through the TSP.

89.     Plaintiff contends that Defendants, as fiduciaries, owe continuing duties of loyalty, candor, and full disclosure to their clients in connection with the administration of the TSP. Plaintiff further contends that those duties prohibit Defendants from placing client cash into a non-interest-bearing sweep program while retaining for themselves the economic value generated by that cash without first providing full and fair disclosure of all material facts and obtaining clients' informed consent.

90. Plaintiff further contends that Defendants' disclosures concerning the TSP are legally insufficient because they fail to fully disclose, among other things, Betterment's financial incentives; the interest, earnings, payments, or other consideration received from participating TSP banks; the methodology for calculating those payments; the amount of the economic spread retained by Betterment; the impact of the TSP on client returns; and the existence and availability of interest-bearing alternatives. Plaintiff further contends that disclosure alone cannot excuse or authorize conduct that otherwise constitutes a breach of Defendants' fiduciary duties.

91. Plaintiff and the Class are entitled to a judicial declaration that: (a) Defendants owe continuing fiduciary duties to clients whose cash is swept, deposited, routed, or maintained through the TSP; (b) Defendants may not, consistent with those fiduciary duties, retain for their own benefit the economic value generated by client cash while placing such cash into non-interest-bearing accounts without full and fair disclosure and informed client consent; (c) Defendants' existing disclosures concerning the TSP fail to satisfy their fiduciary disclosure obligations; and (d) Defendants must comply with their fiduciary obligations in administering the TSP on a prospective basis.

**THIRD CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Class)**

92. Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1–77 by reference as if fully set forth herein.

93. Plaintiff brings this claim individually and on behalf of the Class.

94. Defendants were unjustly enriched at the expense of Plaintiff and the Class. By sweeping Plaintiff's and Class members' cash into non-interest-bearing TSP Deposit-Accounts, Defendants received payments from participating TSP banks based on the balances maintained in those accounts, and captured for themselves the entire economic return generated by client cash while crediting Plaintiff and Class members nothing.

21

95.    The benefits Defendants received were conferred by and derived directly from Plaintiff's and Class members' funds. Every dollar of client cash swept into and maintained in the TSP increased the base on which Defendants earned bank-paid compensation.

96.    Defendants appreciated, accepted, and retained these benefits with full knowledge that they were generated by client cash on which clients received no interest, and with full knowledge of the conflict of interest their own disclosures acknowledged.

97.    Under the circumstances alleged herein—including Defendants' fiduciary relationship with Plaintiff and the Class, their discretionary control over client cash movements, their failure to provide full and fair disclosure of the TSP's economics, and the availability of interest-bearing alternatives—it would be inequitable, unconscionable, and unjust for Defendants to retain the benefits they obtained from Plaintiff's and Class members' cash. Equity and good conscience require restitution.

98.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and the Class are entitled to restitution and disgorgement of all revenues, payments, spreads, profits, and other benefits Defendants obtained through the TSP, the imposition of a constructive trust over such amounts, and such other equitable relief as the Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests, individually and on behalf of all others similarly situated, the following relief:

1.    For an order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, defining the Class as requested herein, appointing Plaintiff as class representative and his counsel as class counsel;

2.    Awarding Plaintiff and Class members all economic, monetary, actual, consequential, compensatory, punitive, and other damages available at law and to be determined by proof;

3.  Awarding restitution, disgorgement, constructive trust, and all other equitable relief necessary to deprive Defendants of the benefits obtained from the wrongful conduct alleged herein;

4.  Declaring that Defendants' TSP constitutes a breach of fiduciary obligations owed to Plaintiff and the Class, and that Defendants' disclosures were legally insufficient to permit the conduct alleged herein;

5.  For an order enjoining Defendants from continuing to operate the TSP in its current form, directing client cash into the arrangement without fair compensation to clients, or otherwise profiting from the spread on client cash;

6.  Awarding Plaintiff's reasonable attorneys' fees, costs, and other litigation expenses;

7.  Awarding pre- and post-judgment interest, as allowable by law;

8.  For public injunctive relief as the Court may deem proper; and

9.  Awarding such further and other relief as the Court deems just, proper and equitable.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: July 10, 2026                    Respectfully submitted,

By: */s/ Omer Kremer*
**EDELSBERG LAW, P.A.**
Omer Kremer (*NY Bar* # 5863477)
Gabriel Mandler (*pro hac vice* forthcoming)
Scott Edelsberg (*pro hac vice* forthcoming)
20900 NE 30th Ave, Suite 417
Aventura, FL 33180
Telephone: 786-289-9471
omer@edelsberglaw.com
gabriel@edelsberglaw.com
scott@edelsberglaw.com

Jason T. Dennett (*pro hac vice* forthcoming)
**MILBERG, PLLC**
1700 7th Avenue, Suite 2100
Seattle, WA 98101
Telephone: (516) 515-9124
jdennett@milberg.com

23

*Counsel for Plaintiff and the Proposed Class*

24